IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| Brian R. Klock, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:09-cv-1003 (GBL) |
| ) | |
| David J. Kappos, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Plaintiff's and Defendants' Cross-Motions for Summary Judgment (Dkt. Nos. 14 & 17). This case concerns the United States Patent and Trademark Office's (USPTO) interpretation of Plaintiff Brian R. Klock's design patent application as failing to state a claim. The issue before the Court is whether the USPTO's decision that Mr. Klock's patent application for "The ornamental design for a motorcycle windshield as shown" was properly denied where the application failed to assert a "claim" as required by 35 U.S.C. § 112, and was arbitrary and capricious under the Administrative Procedures Act ("APA"). The Court holds that the USPTO's decision to disallow the patent application was not arbitrary and capricious because the patent application failed to assert a "claim" and the USPTO examined the relevant data and articulated a satisfactory explanation for its decision. The Court

accordingly denies Plaintiff Brian R. Klock's Motion for Summary Judgment and grants Defendants David J. Kappos's and the USPTO's Motion for Summary Judgment.

## I. Background

### A. The Patent Application Process

When an inventor seeks to patent his invention, he or she must submit a written application to the USPTO. 35 U.S.C. § 111(a)(1) (2006). The application must include a specification, drawings, and an oath. *Id.* at § 111(a)(2). The specification describes the invention in writing and must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." *Id.* at § 112. The inventor must draft each claim in a very technical manner because the claim "set[s] the legal boundaries for the patent owner's exclusive rights." *Hyatt v. Dudas*, 393 F. Supp. 2d 1, 4 (D.D.C. 2005); *rev'd on other grounds*, 492 F.3d 1365, 1370 (Fed. Cir. 2007).

When an inventor files an application for a design patent, the application must include:
   (1) Design application transmittal form.
   (2) Fee transmittal form.
   (3) Application data sheet.
   (4) Specification.
   (5) Drawings or photographs.
   (6) Executed oath or declaration.

37 C.F.R. § 1.154(a) (2006). The fourth element, the

specification, must include six sub-sections, if applicable, in the following order:

> (1) Preamble, stating the name of the applicant, title of the design, and a brief description of the nature and intended use of the article in which the design is embodied.
> (2) Cross-reference to related applications (unless included in the application data sheet).
> (3) Statement regarding federally sponsored research or development.
> (4) Description of the figure or figures of the drawing.
> (5) Feature description.
> (6) A single claim.

*Id.* at § 1.154(b). Each of these subsections "should be preceded by a section heading in uppercase letters without underlining or bold type." *Id.* at § 1.154(c).

When an inventor drafts the language of the design patent claim, it must be "in formal terms to the ornamental design for the article (specifying name) as shown, or as shown and described." 37 C.F.R. § 1.153. The Manual of Patent Examining Procedure ("MPEP") states that the proper form of a claim is: "I claim: The ornamental design for [invention] as shown." U.S. PATENT & TRADEMARK OFFICE, MANUAL OF PATENT EXAMINATION PROCEDURE, § 1503.02 (III) ¶ 15.62 (5th ed. rev. 2006).[1] Finally, the MPEP

---

[1] The exact language of the MPEP states,

> For proper form (37 C.F.R. 1.153), the claim [1] amended to read: "[2] claim: The ornamental design for [3] as shown."

**Examiner note:**

3

also states that "[t]he description of the article in the claim should be consistent in terminology with the title of the invention." *Id.*

Once the inventor submits his application, the USPTO reviews it for completeness and, if complete, accords the application a filing date. 37 C.F.R. § 1.53(b). A design patent application is complete if it includes a description of the invention, a claim, and any required drawings. *Id.* If the application is incomplete, the USPTO notifies the applicant and gives the applicant an opportunity to correct the errors. *Id.* at § 1.53(e)(1).

If the applicant fails to correct the errors within the allotted time period, the USPTO terminates the proceedings. 37 C.F.R. § 1.53(e)(3). However, the applicant may revive a terminated design patent application by filing a "petition to revive" under section 1.137, a "terminal disclaimer," and a fee as set forth in section 1.321. *Id.* at § 1.37(e).

If the applicant corrects the errors within the allotted time period, the USPTO then examines the application. 37 C.F.R. § 1.104. If the design "is not considered patentable, or not

---

1. In bracket 1, insert -- must be --.
2. In bracket 2, insert -- I -- or - We --.
3. In bracket 3, insert title of the article in which the design is embodied or applied.

U.S. PATENT & TRADEMARK OFFICE, MANUAL OF PATENT EXAMINATION PROCEDURE, § 1503.02 (III) ¶ 15.62 (5th ed. rev. 2006).

4

considered patentable as claimed, the claims, or those considered unpatentable will be rejected." *Id*. The USPTO then issues an "Office action detailing the rejection and addressing the substantive matters which affect patentability." UNITED STATES PATENT AND TRADEMARK OFFICE, A GUIDE TO FILING A DESIGN PATENT APPLICATION 10, http://www.uspto.gov/web/offices/com/iip/pdf/brochure_05.pdf. If the applicant "persists in his or her application for a patent or reexamination proceeding," he or she "must reply and request reconsideration or further examination, with or without amendment." 37 C.F.R. § 1.111. Upon reply, the USPTO reconsiders and re-examines the application. *Id*. at § 1.112 (2006). If the USPTO rejects the application a second time, the rejection may be considered a final action. *Id*. at § 1.113(a).

## B. Plaintiff's Design Patent Application

Mr. Klock, an inventor from Mitchell, South Dakota, deposited U.S. Design Patent Application Serial No. 29/303,937 ("'937 Application") with the USPTO on February 20, 2008, for "A Flared Windshield for a Motorcycle." (Admin. R. at 1.) After reviewing his submission, the USPTO denied Mr. Klock's '937 Application a filing date because it did not include a claim, filing fees, and the inventor's oath. (Admin. R. at 9.) The USPTO sent Mr. Klock a "Notice of Incomplete Nonprovisional Application" on March 7, 2008, informing him about the '937 Application's deficiencies. (Admin R. at 9-10.) When Mr. Klock

5

failed to timely correct the alleged deficiencies, the USPTO terminated the proceedings on June 10, 2008. (Admin. R. at 14.)

Instead of filing a petition to revive the '937 Application under 37 C.F.R. § 1.137, Mr. Klock submitted a "Petition for Grant of Filing Date Under 37 C.F.R. 1.53(e)" on July 2, 2008, requesting that the USPTO accord his '937 Application the original February 20, 2008, filing date. (Admin. R. at 15.) The USPTO reviewed the '937 Application again and dismissed the Petition because the '937 Application remained incomplete. (Admin R. at 61-64.) Nine months later, Mr. Klock filed a "Request for Reconsideration of Denial of Petition for Grant of Filing Date Under 37 C.F.R. 1.53(e)," requesting that the USPTO reconsider its dismissal. (Admin. R. at 66.) The USPTO denied the request in a July 6, 2009, letter titled "Decision Denying Petition"). (Denial Letter, Admin. R. at 133-39.)

The Denial Letter is divided into four sections: (1) "Background;" (2) "Statute and Regulation;" (3) "Discussion;" and (4) "Decision." The Background section provides the procedural history of Mr. Klock's '937 Application. (Admin. R. at 133-34.) The Statute and Regulation section describes the applicable law that governs a design patent application. This section sets forth the requirements for filing a design patent application under 35 U.S.C. §§ 111, 112 and 37 C.F.R. § 1.153. (Admin. R. at 134-35.) The Discussion section states that the

USPTO denied Mr. Klock's '937 Application because it failed to state a claim. The USPTO describes Mr. Klock's arguments and systematically analyzes why each argument is unpersuasive under the facts and law. (Admin. R. at 135-38.) Finally, the Decision section reiterates the USPTO's main reason for denying the Petition, and states that the decision is a final agency action for purposes of seeking judicial review. (Admin. R. at 139.)

After receiving the Denial Letter, Mr. Klock filed this action against the USPTO and David J. Kappos, its Director. Mr. Klock seeks (1) judicial review of the USPTO's decision under the Administrative Procedure Act and (2) a writ of mandamus requiring Defendants to either find that the '937 Application is complete and issue a filing date of February 20, 2008, or to allow Mr. Klock to amend the '937 Application so that it meets the statutory filing requirements. (Compl. at 12; Pl.'s Mot. Summ. J. at 9.) The case is now before the Court on Mr. Klock's and the Defendants' Cross-Motions for Summary Judgment on all counts of the Complaint. (Pl.'s Mot. Summ. J.; Defs.' Mot. Summ. J.)

## II. Discussion

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that

7

there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). However, in an action brought under the APA, there is no material fact at issue but only a question of law:

> [W]hen a party seeks review of agency action under the APA before a district court, the district judge sits as an appellate tribunal. The entire case on review is a question of law, and the complaint, properly read, actually presents no factual allegations, but rather only arguments about the legal conclusion to be drawn about the agency action.

*Rempfer v. Sharfstein*, 583 F.3d 860, 865 (D.C. Cir. 2009) (quotations omitted); *see Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993) ("[W]hen an agency action is challenged . . . the entire case on review is a question of law.").

Under the APA, the district court may review agency decisions. *Rempfer*, 583 F.3d at 865. Agency decisions are reviewed according to the standard set forth in 5 U.S.C. § 706, which states:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
>
> (1) compel agency action unlawfully withheld or unreasonably delayed; and
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (B) contrary to constitutional right, power, privilege, or immunity;
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> (D) without observance of procedure required by law;
> (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
>
> In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706 (2006). When reviewing decisions by an agency, the standard of review is "highly deferential, with a presumption in favor of finding the agency action valid." *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009)(finding the U.S. Army Corps of Engineers' actions valid under § 706 when the Corps based its decisions on scientific studies). Generally, the court should uphold the agency action if the agency has examined the relevant data' and provided an explanation of its decision that includes a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983). The reviewing court "may not supply a reasoned

basis for the agency's action that the agency itself has not given." *Id.* at 43. However, "even when an agency explains its decision with less than ideal clarity, a reviewing court will not upset the decision on that account if the agency's path may reasonably be discerned." *Alaska Dep't of Envtl. Conservation v. Envtl. Prot. Agency*, 540 U.S. 461, 497 (2004).

B. Analysis

1. Count I (Declaratory Judgment)

The Court denies Mr. Klock's Motion for Summary Judgment and grants Mr. Kappos' and the USPTO's Motion for Summary Judgment on count I because the USPTO's decision to deny Mr. Klock a filing date was not arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law.[2] Under section 706(a), the court must examine the agency's decisions to determine whether the agency's action was arbitrary or capricious. 5 U.S.C. § 706 (2006); *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009). Generally, an agency decision is *not* arbitrary and capricious if the agency considered the relevant data and presented a satisfactory

---

[2] In count I, Mr. Klock seeks judicial review of the USPTO's denial of his petition to accord his '937 Application a filing date. Mr. Klock alleges that the USPTO's decision is unlawful under 5 U.S.C. §§ 706(2)(A)-(D) and (2)(F). However, Mr. Klock does not present any arguments for how the USPTO's decision is unlawful under § 706(2)(B), (2)(C), (2)(D), or (2)(F). Therefore, the Court only reviews the USPTO's findings under the "arbitrary, capricious, [] abuse of discretion, or otherwise not in accordance with law" standard of § 706(2)(A).

explanation for its decision that includes "a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (*citing Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). An agency ruling *is* arbitrary and capricious when it "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.*

In *Motor Vehicle Manufacturer's Association v. State Farm Mutual Auto Insurance Company*, the Supreme Court examined a decision made by the National Highway Traffic Safety Administration (NHTSA). *Id* at 34. The NTHSA's decision revoked an earlier safety standard that required new motor vehicles to be equipped with passive seat belts or air bags. *Id.* The Court found that the NTHSA's decision was arbitrary and capricious because it "failed to present an adequate basis and explanation for rescinding" the safety standard. *Id.* Specifically, the NTHSA failed to provide any findings or analysis to justify its decision, and gave "no indication of the basis on which the agency exercised its expert discretion." *Id.* at 48. If the

agency had articulated a "cogent" explanation for the rescission, its decision would have been upheld. *Id.*

Here, Defendants examined the relevant data and articulated a satisfactory explanation for their action, premised on a relevant connection between the facts found and the choice made. The Denial Letter thoroughly recounts, analyzes, and refutes each of Mr. Klock's arguments in three single-spaced pages. First, the letter describes Mr. Klock's arguments that the phrase, "The ornamental design for a motorcycle windshield as shown," is the claim. (Admin. R. at 135, 137.) In particular, the letter recounts Mr. Klock's arguments that: (1) the provisions of 37 C.F.R. § 1.154 are only "desirable" provisions, and design patent application elements that appear in a different order still comply with the requirements of 37 C.F.R § 1.153 (Admin. R. at 135-36); (2) the purported claim "clearly conforms" with the requirements of 37 C.F.R. § 1.153 because it uses the language, "the ornamental design for the article (specifying name) as shown" (Admin. R. at 136); (3) 35 U.S.C. § 112 ¶ 2 does not expressly state that an application is not entitled to a filing date if the application "does not conclude with a claim" or "does not particularly point[] out and distinctly claim[] the subject matter which applicant regards as his invention" (Admin. R. at 136); (4) the purported claim "has no other reasonable interpretation" than as a design patent

12

claim (Admin. R. at 136); and (5) other design patent applications processed by the USPTO demonstrate that the USPTO should recognize the purported claim in the '937 Application (Admin. R. at 137).

Second, Defendants articulated a satisfactory explanation for their decision to deny the '937 Application a filing date. In the Denial Letter, Defendants state that Mr. Klock's purported claim[3] was not interpreted as a claim because: (1) it did not include the word claim; (2) it did not appear at the end of the specification as required by 35 U.S.C. § 112; and (3) it appeared as a sentence below the heading of "Brief Description of the Drawings" and therefore was considered part of the brief description (Admin. R. at 138). The Court holds that this explanation is satisfactory because the USPTO's reasoning was based solely on the plain language of the relevant statutes, the Code of Federal Regulations, and the MPEP when interpreting the patent application (Admin. R. at 134-35, 137-38).

Further, the USPTO did not "rely on factors which Congress has not intended it to consider, entirely fail[] to consider an important aspect of the problem, offer[] an explanation for its decision that runs counter to the evidence before the agency, or [come to a decision that] is so implausible that it could not be

---

[3] Klock claims that the phrase, "The ornamental design for a motorcycle windshield, as shown," is the application's claim.

13

ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43. To the contrary, the Denial Letter demonstrates that Defendants articulated a "rational connection between the facts found and the choices made" because Defendants used the plain meaning of the governing statutes and regulations to resolve the '937 Application's ambiguities (Admin. R. at 1). *Ohio Valley Envtl. Coal.*, 556 F.3d at 192.

Despite Defendants' clear reasoning, Mr. Klock contends that the language in the '937 Application should be interpreted to state a claim. (Pl. Mot. Summ. J. at 1; Pl.'s Mem. Supp. Summ. J. at 5-8; Pl.'s Reply at 1.) However, this argument requires the Court to interpret the '937 Application itself, rather than simply review the USPTO's decision for arbitrariness. Since "[t]he court is not empowered to substitute its judgment for that of the agency," this argument fails. *Ohio Valley Envtl. Coal.*, 556 F.3d at 192. Instead, the Court must defer to the agency's decision when the agency "has examined the relevant data and provided an explanation of its decision that includes a rational connection between the facts found and the choice made." *Id.*

Even under a de novo review, the Court holds that the USPTO's decision denying the patent application for failing to assert a "claim" as required by 35 U.S.C. § 112 is warranted.

The '937 Application fails to state a claim because it fails to comply with four different claim requirements set out by 35 U.S.C. § 112, 37 C.F.R. §§ 1.153-1.154, and the MPEP. First, the '937 Application's specification does not conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which Mr. Klock regards as his invention, as required by 35 U.S.C. § 112 and 37 C.F.R. § 1.154(b). (Admin. R. at 1.) Instead, the specification concludes with the language, "FIGURE 7 is a left side elevational view thereof." (Admin. R. at 1.) In fact, the '937 Application does not include a claim section at all. (Admin. R. at 1.) Second, the '937 Application does not have a claim section heading "in uppercase letters without underlining or bold type," as specified in 37 C.F.R. § 1.154(c). (Admin. R. at 1.) While the '937 Application follows the headings requirement for the preamble and description sections of the specification, it does not include a separate claim section with a separate heading entitled "claim." (Admin. R. at 1.)

Third, the language of the specification does not follow the specific format for a claim under 37 C.F.R. § 1.153 and the MPEP. (Admin. R. at 1.) In order to comply with the CFR and MPEP, Mr. Klock's application should state, "*I claim:* The ornamental design for *A Flared Windshield for a Motorcycle*, as shown." Instead, his purported claim states, "The ornamental

15

design for a motorcycle windshield, as shown." (Admin. R. at 1.) Finally, the description of the invention in the purported claim is not consistent in terminology with the '937 Application's title. (Admin. R. at 1.) While the title of the invention is "A flared windshield for a motorcycle," the purported claim describes the invention as "a motorcycle windshield." (Admin. R. at 1.)

Together, these failures demonstrate that Mr. Klock did not state a claim in the '937 Application. There is no separate claim section at the end of the specification, no claim heading, no words stating "I claim" or "we claim" or tracking the claim language set out in the MPEP, and no words that are consistent in terminology with the title of the invention. (Admin. R. at 1.) Therefore, the Court holds that the USPTO's decision to deny Mr. Klock's patent application because he failed to state a claim in his '937 Application was a proper application of existing law. Accordingly, the Court denies Mr. Klock's Motion for Summary Judgment and grants Mr. Kappos' and the USPTO's Motion for Summary Judgment on count I because the USPTO's decision to deny Mr. Klock a filing date was not arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law, and because Mr. Klock's application does not state a claim.

## 2. Count II (Writ of Mandamus)

The Court denies Mr. Klock's Motion for Summary Judgment and grants Mr. Kappos' and the USPTO's Motion for Summary Judgment on count II because the USPTO's decision to deny Mr. Klock a filing date did not violate 5 U.S.C. § 706 and because Mr. Klock makes no argument for why he should be allowed to amend the '937 Application so that it meets the statutory filing requirements. "To obtain mandamus relief, a petitioner must show that: (1) he has a clear and indisputable right to the relief sought; (2) the responding party has a clear duty to do the specific act requested; (3) the act requested is an official act or duty; (4) there are no other adequate means to attain the relief he desires; and (5) the issuance of the writ will effect right and justice in the circumstances." *In re Kelley*, No. 09-1738, 2009 U.S. App. LEXIS 27023, at *1 (4th Cir. Dec. 11, 2009) (*citing In re Braxton*, 258 F.3d 250, 261 (4th Cir. 2001)) (internal quotation marks and citation omitted).

Mr. Klock asks the Court to issue a writ of mandamus requiring Defendants to either: (1) find that the '937 application is complete and issue a filing date of February 20, 2008, or (2) allow Mr. Klock to amend the '937 Application so that it meets the statutory filing requirements. (Compl. at 11.) However, Mr. Klock fails to satisfy four of the five elements required for a writ of mandamus. First, Mr. Klock does

17

not prove that he has a clear and indisputable right to receive a filing date or to amend the '937 application. Mr. Klock does not have a right to a filing date because Defendants lawfully denied his patent application when he omitted the claim section of the application's specification. As described above, under both an "arbitrary and capricious" and de novo review, Mr. Klock does not have a right to amend the '937 Application. (Part II.B.1, *infra*.) Further, Mr. Klock lost his right to amend the '937 Application when the USPTO terminated his '937 Application on June 10, 2008, and Mr. Klock failed to follow the statutory procedures for reviving his application (Admin. R. at 133). 37 C.F.R. §§ 1.37(e), 1.53(e)(3).

Second, Mr. Klock does not show that Defendants have a clear duty to do the specific act requested. As the record reflects, the '937 Application was incomplete. (Admin. R. at 139.) Defendants do not have a duty to allow Mr. Klock to amend the '937 Application because the time period for amendments expired, Mr. Klock's application was terminated, and Mr. Klock did not revive his application under 37 C.F.R. § 1.37(e). (Admin. R. at 133.)

Third, mandamus is inappropriate because other adequate means exist to attain relief. Mr. Klock's request for a declaratory judgment under 5 U.S.C. § 706 is the appropriate means for relief and therefore precludes relief through a writ

of mandamus. Finally, Mr. Klock does not show that a writ would affect right and justice. Any argument that he would be "forever prejudiced" if denied a filing date (Pl.'s Reply 3; Defs.' Reply 13 n.6) is overcome by the fact that Mr. Klock already has a valid patent for the exact design at issue in this suit. (Patent No. US D586,275 S; Defs.' Reply Ex. 4.) Consequently, Mr. Klock fails to prove the elements for mandamus relief and, therefore, the Court denies Mr. Klock's Motion for Summary Judgment and grants Mr. Kappos's and the USPTO's Motion for Summary Judgment on count II.

### III. Conclusion

The Court denies Plaintiff Brian R. Klock's Motion for Summary Judgment and grants Defendants David J. Kappos's and the USPTO's Motion for Summary Judgment because the USPTO's decision to deny Mr. Klock a filing date was not arbitrary and capricious and because Mr. Klock fails to meet the elements required for a writ of mandamus.

The Clerk is directed to forward a copy of this Memorandum Opinion to counsel of record.

Entered this ___ day of July, 2010.

/s/
Gerald Bruce Lee
United States District Judge

Alexandria, Virginia